UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANA GATLING,

                              Plaintiff,

v.                                              6:18-CV-0275
                                                (GTS/TWD)
THOMAS M. WEST,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF RUSSELL A. SCHINDLER                  RUSSELL A. SCHINDLER, ESQ.
   Counsel for Plaintiff
245 Wall Street
Kingston, NY 12401

HON. LETITIA A. JAMES                           AIMEE COWAN, ESQ.
Attorney General for the State of New York      Assistant Attorney General
   Counsel for Defendant
300 S. State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently pending before the Court, in this civil rights action filed by Dana Gatling

("Plaintiff") against Thomas M. West ("Defendant"), is Defendant's motion for summary

judgment.  (Dkt. No. 20.)  For the reasons set forth below, Defendant's motion for summary

judgment is granted.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that at approximately 11:23 a.m. on May 14, 2017, Defendant, a New York State Trooper, violated Plaintiff's civil rights when he wrongfully took her into physical custody after she refused his request to search her vehicle during a traffic stop on Interstate 88 in the Town of Oneonta. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) More specifically, Plaintiff, who is an African-American, alleges that (1) Defendant lacked probable cause to arrest her, (2) Defendant caused Plaintiff to be maliciously prosecuted for Driving While Ability Impaired by Drugs, and (3) Defendant's actions were motivated by racial discrimination. (*Id.*) Based on these factual allegations, Plaintiff's Complaint claims that Defendant subjected her to false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983, as well as racial discrimination pursuant to 42 U.S.C. § 1981. (*Id.*)

## B. Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported with accurate citations by Defendant in his Statement of Undisputed Material Facts and expressly admitted, or denied without appropriate record citations, by Plaintiff in her response thereto. (*Compare* Dkt. No. 20-1 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 22-1 [Plf.'s Rule 7.1 Resp.].)

1. On May 14, 2017, Plaintiff was traveling eastbound on Interstate 88 in the Town of Oneonta in her grey 2010 Chevy Impala.

2. At 11:22 a.m., a motorist named Alice Vincent called 911 and reported that she was observing a grey Chevy Impala that was being driven erratically eastbound on Interstate 88, near mile marker 49.

3.     Ms. Vincent indicated that she wanted to make an official complaint and that she was following the vehicle.

4.     As a result of the 911 call, Defendant Trooper West responded to the area in question on eastbound Interstate 88.

5.     Defendant has been employed by the New York State Police since 2007.

6.     On May 14, 2017, Defendant was employed in his capacity as a New York State Trooper.  Defendant's duties included investigating complaints and enforcing the vehicle and traffic laws of the State of New York.  During the course of his career with the New York State Police, Defendant has been involved in approximately 200 to 300 arrests for driving while intoxicated and driving while ability impaired.

7.     From an overpass, Defendant spotted a grey Chevy Impala traveling eastbound on Insterstate 88 in the area in question and followed Plaintiff for one-half mile.  Defendant believed he observed the grey Impala commit a New York State Vehicle and Traffic Law infraction by following another vehicle too closely.

8.     More specifically Defendant observed Plaintiff traveling two to three car lengths, or 25 to 35 feet, behind another vehicle at "around 50, 50 to 55 miles" per hour.[1]

9.     Defendant initiated a traffic stop of the grey Chevy Impala, which was operated by Plaintiff.

10.     Upon Defendant's employment of his lights, Plaintiff pulled over normally and without incident.[2]

_____

[1]      (Dkt. No. 20-4, at 9-11.)

[2]      (Dkt. No. 20-4, at 9-10.)

11.     Defendant approached Plaintiff's vehicle from the passenger side and asked her for her license and registration.[3]  Plaintiff complied with the request.  During Defendant's initial conversation with Plaintiff, she was "very cooperative."[4]

12.     Defendant took Plaintiff's documents back to his vehicle and determined the documents were valid and that there was nothing of concern about Plaintiff's record.[5]

13.     Defendant returned to Plaintiff's vehicle and spoke further with her: Defendant intended to make sure that Plaintiff was safe to operate a motor vehicle.[6]

14.     While speaking with Plaintiff the first and second time, Defendant did not detect any odor of alcohol or marijuana on Plaintiff, nor did he observe drug paraphernalia, empty pill bottles or medicine containers.[7]  However, Defendant believed Plaintiff's eyes were bloodshot and watery and that her pupils were constricted.

15.     At some point during her first or second conversation with Defendant, Plaintiff told him she had been driving for approximately six hours.[8]  (Plaintiff later testified that she had left her home that morning at 5:00 a.m. and driven until she stopped somewhere in "a town" along the way to grab a Starbucks coffee approximately three hours before being stopped by Defendant.)[9]

---

[3]     (Dkt. No. 20-4, at 11-12.)

[4]     (Dkt. No. 20-4, at 16.)

[5]     (Dkt. No. 20-4, at 12-14.)

[6]     (Dkt. No. 20-4, at 14, 16.)

[7]     (Dkt. No. 20-4, at 17.)

[8]     (Dkt. No. 20-4, at 15.)

[9]     (Dkt. No. 20-3, at 25-26, 34.)

4

16.     Defendant asked Plaintiff to step out of her vehicle so that he could conduct field sobriety testing.  Plaintiff complied with the request to exit the vehicle and walked to the front of her car; she also ultimately complied with Defendant's request to submit to a field sobriety test.[10]

17.     Plaintiff passed both the horizontal gaze nystagmus test and the alphabet test.

18.     Defendant also administered the walk-and-turn test, which requires the subject to walk nine steps forward, turn around and take nine steps in the opposite direction.

19.     Defendant believed that Plaintiff failed the walk-and-turn test (although in his deposition he could not recall the particular "clues" that had indicated her failure).

20.     Defendant also administered a one-leg-stand test, which requires the subject to lift her leg off the ground, hold her hands out to her sides and count out loud until instructed to stop.

21.     Defendant believed that Plaintiff failed the one-leg-stand test (although, again in his deposition he could not recall the particular "clues" that had indicated her failure).

22.     Defendant also administered a finger-count test, which requires the subject to count her fingers with her own finger.  The finger-count test is typically performed on subjects whom the officer believes may be under the influence of a substance other than alcohol.

23.     Defendant believed that Plaintiff failed the finger-count test (although, again in his deposition he could not recall the particular "clues" that had indicated her failure).

24.     In her deposition, Plaintiff testified that she felt she had passed the walk-and-turn test, the one-leg-stand test and the finger-count test (as well as a finger-to-nose test); however, she also testified that she did not know how Defendant was evaluating her.[11]

---

[10]     (Dkt. No. 20-3, at 16-21.)

[11]     (Dkt. No. 20-3, at 30-33.)

25.     After completion of the field sobriety testing, Defendant began to ask Plaintiff some questions about her health that may affect her balance; Plaintiff told him she did not wish to answer such questions.[12]

26.     Defendant informed Plaintiff she was under arrest for "DWI" and he placed her in handcuffs.[13] Defendant's subsequent search of Plaintiff's person and car produced no evidence consistent with drug use, such as pill bottles, medication containers, or drug paraphernalia.[14]

27.     According to the Uniform Traffic Ticket, Plaintiff was placed under arrest for violating New York State Vehicle and Traffic Law ("VTL") sections § 1192(4) (driving while ability impaired by drug) and § 1129(a) (following another vehicle more closely than is reasonable and prudent).

28.     Defendant then transported Plaintiff to the police station while her vehicle was inventoried and towed from the scene.

29.     Once Defendant arrived at the police station, he requested that Trooper Jonathan Cook complete a Drug Recognition Evaluation of Plaintiff.  Plaintiff voluntarily submitted Trooper Cook's drug recognition interview.

30.     At the time of the interview, Trooper Cook was a drug recognition expert, standardized sobriety test instructor, and drug recognition expert instructor.

---

[12]     (Dkt. No. 20-4, at 21-23.)

[13]     (Dkt No. 20-4, at 22-23.)

[14]     (Dkt. No. 20-4, at 24-25.)

31.     Despite the fact that Plaintiff answered some of Trooper Cook's questions (including denying she had taken any drugs), he stated that "the subject appeared to be uncooperative and declined to answer several basic questions."[15]

32.     After interviewing Plaintiff, Trooper Cook believed that she was impaired by an undetermined "central nervous system stimulant" and that it was unsafe for her to drive a motor vehicle.

33.     In arriving at his opinion, Trooper Cook took into account many factors, including, but not limited to, Plaintiff's elevated pulse, her elevated blood pressure, her Romberg balance test results, her walk-and-turn test results, her one-leg-stand test results, the slow reaction of her pupils to light, and the luminescent coloring around her mouth.

34.     Caffeine is a central nervous system stimulant.[16]

35.     Trooper Cook's evaluation (which began at 12:27 p.m.) was not known to Defendant at the time of the arrest, which was 11:50 a.m.[17]

36.     A urine sample was obtained from Plaintiff and she was charged with and processed for violating VTL § 1192(4) and § 1 l29(a).

37.     Neither Trooper West nor Trooper Cook ever made any reference to the color of Plaintiff's skin or her race.

38.     Plaintiff was arraigned on the two charges at the Town of Oneonta Court that same day, and held in lieu of $2,500.00 bail.  She was bailed out sometime later that evening

---

[15]     (Dkt. No. 20-5, at 53; Dkt. No. 20-10, at 4.)

[16]     (Dkt. No. 20-5, at 48.)

[17]     (Dkt. No. 20-8, at 4; Dkt. No. 20-5, at 14.)

between 7:00 PM and 10:00 PM.  Plaintiff was only in jail for a few hours before she was released.

39.     The results of Plaintiff's urine test were received in a report dated July 11, 2017.

40.     Of the twelve compounds tested for at the Forensic Investigation Center, none was detected in Plaintiff's urine.  The test was only a basic panel that did not test for all possible drugs.

41.     Plaintiff's criminal charge of violating VTL § 1192(4) (operating a motor vehicle while impaired by drugs, first degree) was withdrawn by the District Attorney's Office on December 14, 2017, after the urine test results were received.

42.     Plaintiff's criminal charge of violating VTL § 1129(a) (following another vehicle more closely than is reasonable and prudent) was dismissed by the Honorable Seaj J. Farrell, Town Justice, on July 3, 2018.[18]

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statements and Rule 7.1 Responses, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.

## II.     THE PARTIES' ARGUMENTS ON DEFENDANT'S MOTION

### A.     Parties' Briefing on Defendant's Motion

Generally, in support of his motion for summary judgment, Defendant argues as follows: (1) Plaintiff's false arrest claim should be dismissed because Defendant had probable cause to arrest Plaintiff, (2) Plaintiff's malicious prosecution claim should be dismissed because (a) a traffic infraction is not a criminal offense, (b) Defendant had probable cause to charge Plaintiff

---

[18]     (Dkt. 20-6, at 3; Dkt. No. 20-3, at 69-70.)

with that infraction, (c) Plaintiff cannot show that he acted with actual malice, and (d) Defendant is protected from liability as a matter of law by the doctrine of qualified immunity, and (3) Plaintiff's racial discrimination claim should be dismissed because she cannot show that Defendant discriminated against her based on her race or that Defendant intentionally did so. (*See generally* Dkt. No. 20-12 [Def. Memo. of Law].)

Generally, in response to Defendant's motion for summary judgment, Plaintiff argues as follows: (1) Defendant did not have probable cause to initially stop Plaintiff because he did not corroborate the civilian report of erratic driving, and no case law supports a finding that Plaintiff was following another driver too closely; (2) there is a genuine dispute of material fact as to whether Defendant had probable cause to arrest Plaintiff for driving while ability impaired by drugs because (a) she passed two of the five field sobriety tests she was administered, (b) Defendant could not explain how she purportedly failed the other three tests, (c) she subsequently passed a urine test, and (d) Trooper Cook's Drug Recognition Evaluation occurred too late to support Defendant's arrest of Plaintiff; (3) Plaintiff's malicious prosecution claim should survive because actual malice can be inferred from the absence of probable cause; and (4) Plaintiff's racial discrimination claim should survive because she is African-American, Defendant is Caucasian, and Defendant arrested and charged her based on her race as it is clear from the fact that Defendant was unable to identify any of her actions that were purportedly "uncooperative and disrespectful." (*See generally* Dkt. No. 22-2. [Plf.'s Opp'n Memo. of Law].)

Generally, in his reply, Defendant argues as follows: (1) he had reasonable suspicion to stop Plaintiff based on a civilian report and his observation of her driving, and he developed probable cause to arrest her during the course of the traffic stop based on his observation of her

eyes and her performance on the sobriety tests; (2) Plaintiff failed to oppose Defendant's

qualified immunity argument; (3) Plaintiff's malicious prosecution claim is without merit

because she failed to oppose Defendant's argument that such a claim cannot be based on a traffic

ticket, and, in any event, Defendant had probable cause to arrest Plaintiff; and (4) Plaintiff has

failed to produce any admissible record evidence that Defendant's conduct was either

discriminatory or racially motivated.  (*See generally* Dkt. No. 23 [Def. Reply Memo. of Law].)

## III.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).[19]  As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

---

[19]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are
insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.
1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more
than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[20]  (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[21]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[20]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[21]     *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[22]

      Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[23] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[22]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[23]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

## B. Legal Standard Governing False Arrest Claim Under 42 U.S.C. § 1983

"In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 151 [2d Cir. 2006]). "Under New York law, a false arrest claim requires a plaintiff to show that 'the defendant intentionally confined him without his consent and without justification.'" *Dancy*, 943 F.3d at 107 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 [2d Cir. 1996]). Accordingly, "[t]o establish a cause of action for false arrest, a plaintiff must prove that[:] (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Hotaling v. LaPlante*, 167 F. Supp. 2d 517, 521 (N.D.N.Y. 2001) (citations omitted) (Hurd, J.); *accord, Weyant*, 101 F.3d at 852-53.

However, "'[t]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy*, 843 F.3d at 107 (quoting *Jaegly*, 439 F.3d at 152). "'In general, probable cause to arrest exists when the officers have knowledge or reasonable trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852 (citations omitted). "This inquiry is limited to whether the facts known by the arresting officer at

the time of the arrest objectively provided probable cause to arrest." *Gonzalez*, 728 F.3d at 155 (internal quotation marks omitted).  Although "an officer need not have concrete proof of each element of a crime to establish probable cause for an arrest, probable cause means more than bare suspicion." *Id.* (internal citations and quotation marks omitted).

### C.  Legal Standard Governing Malicious Prosecution Claim Under 42 U.S.C. § 1983

"To state a valid claim for . . . malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claim []." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012).  "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

### D.  Legal Standard Governing Racial Discrimination Claim Under 42 U.S.C. § 1981

"To establish a claim under § 1981, plaintiffs 'must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities.'" *Hernandez v. City of Albany*, 12-CV-1614, 2015 WL 364183, at \*4 (N.D.N.Y. Jan. 27, 2015) (Kahn, J.) (quoting *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 [2d Cir. 1999]).

## IV.    ANALYSIS

### A.    Whether Plaintiff's False Arrest Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons set forth in Defendant's memoranda of law.  (Dkt. No. 20-12; Dkt. No. 23.)  To

those reasons, the Court adds only the following analysis.

A "law enforcement official has probable cause to arrest if he received his information

from . . . the putative victim or eyewitness, unless the circumstances raise doubt as to the

person's veracity."  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal citation

omitted).  In addition, the reliability or veracity of the person and her or her basis of knowledge

are two important factors in determining whether probable cause existed at the time of arrest.

*Panetta*, 460 F.3d at 395.  The veracity of identified private citizen informants is generally

presumed in the absence of special circumstances suggesting the private citizen should not be

trusted because he or she may be held accountable for that information if it proves false.  *United*

*States v. Elmore*, 482 F.3d 172, at 180-81 (2d Cir. 2007).

### 1.    Whether Defendant Had Reasonable Suspicion to Stop Plaintiff

In this case, Plaintiff erroneously contends that probable cause is needed to effect a traffic

stop and that Defendant did not have such probable cause.  The Supreme Court has clearly

established that courts should apply the "reasonable suspicion" standard, not the "probable

cause" standard, when evaluating an investigatory stop.  *Navarette v. California*, 572 U.S. 393,

396-97 (2014).  The Supreme Court has further held that an anonymous 911 call can provide a

police officer with adequate reasonable suspicion to conduct an investigatory stop.  *Navarette*,

572 U.S. at 398-99. Finally, "an officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving." *Id.* at 404.

Here, a 911 caller provided her name and reported that a specific vehicle–a grey Chevy Impala–was driving erratically on a specific portion of eastbound Interstate 88. Defendant soon thereafter confirmed the presence of such a Chevy Impala on that portion of eastbound Interstate 88. Moreover, Defendant observed the Chevy Impala driving what he believed to be too closely behind another vehicle (whether or not such driving may reasonably be characterized as "erratic"). Based on the totality of the circumstances, Defendant had enough information to establish reasonable suspicion in support of a stop of Plaintiff's vehicle.

### 2. Whether Defendant Had Probable Cause to Arrest Plaintiff

As an initial matter, the Court finds that it cannot be genuinely disputed that Defendant had probable cause to arrest Plaintiff for violating VTL § 1129(a) (following too closely) based on the current record, specifically (1) Defendant's observation of Plaintiff's proximity to the car in front of her and the speed at which she was traveling, (2) her proximity to a construction zone,[24] and (3) the near-contemporaneous citizen complaint (communicated to Defendant through the 911 operator) that Plaintiff was "all over the roadway."[25] This is so, regardless of whether Defendant advised Plaintiff that her arrest was for, *inter alia*, violating VTL § 1129(a). *See Jaegly*, 439 F.3d at 154 ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect

---

[24]     (Dkt. No. 20, Attach. 3, at 23-24; Dkt. No. 20, Attach. 4, at 8, 11, 37.)

[25]     (Dkt. No. 21 [containing CD].)

16

to . . . any charge actually invoked by the arresting officer at the time of arrest.").[26]  This is also

so regardless of whether under New York State law such a violation may result only in only an

appearance ticket, because a false arrest claim under 42 U.S.C. § 1983 turns on a violation of the

Fourth Amendment and not New York State law.  *Picciano v. McLoughlin*, 723 F. Supp.2d 491,

503-04 (N.D.N.Y. 2010) (Suddaby, J.).

Turning to whether Defendant had probable cause to arrest Plaintiff for violating VTL §

1192(4) (driving while ability impaired by drug), Defendant had such probable cause.  "There is

a large difference between the two things to be proved [guilt and probable cause], as well as

between the tribunals which determine them, and therefore a like difference in the *quanta* and

modes of proof required to establish them."  *Draper v. United States*, 358 U.S. 307, 312 (1959)

(emphasis in original).  "The fact that an innocent explanation may be consistent with the facts

alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's

protestations of innocence generally does not vitiate probable cause."  *Panetta*, 460 F.3d at 395-

96 (internal citation and quotation marks omitted).  Indeed, "[o]nce an officer has a reasonable

basis for believing there is probable cause, he is not required to explore and eliminate every

theoretically plausible claim of innocense before making an arrest."  *Ricciuti v. NYC Transit

Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 [1979]

---

[26]     *See also Noel v. Cty. of Nassau*, 11-CV-5370, 2015 WL 541461, at *6 (E.D.N.Y.
Feb. 7, 2015) ("[I]f Officer Cardone had probable cause to arrest Plaintiff on any of the charges
filed against Plaintiff (or any uncharged offense as well), the arrest is entirely privileged . . . .");
*Ruttkamp v. De Los Reyes*, 10-CV-0392, 2012 WL 3596064, at *8 (D. Conn. Aug. 20, 2012)
("The Second Circuit has made clear that . . . the existence of probable cause to arrest for . . .
uncharged crimes provides a defense to claims of false arrest . . . ."); *Adonis v. Coleman*,
08-CV-1726, 2009 WL 3030197, at *7 (S.D.N.Y. Sept. 23, 2009) ("Although Tahani was not
charged with obstructing pedestrian traffic, an arrest is not unlawful if the officer has probable
cause to believe that the person arrested has committed any crime, regardless of whether probable
cause supported any charge identified specifically by the arresting officer at the time of arrest.")

[noting that an officer specifically need not investigate a defense such as the "lack of requisite intent"]).  For example, in *Curley v. Village of Suffern*, the Second Circuit held that, when a purported assault victim who was visibly injured told a police officer that a person had assaulted him, the officer had probable cause to arrest the person notwithstanding the person's conflicting account.  268 F.3d 65, 69-70 (2d Cir. 2001).

Here, Defendant personally observed Plaintiff after effectuating a traffic stop.  Although Defendant did not detect any odor of alcohol or marijuana on Plaintiff, Defendant observed Plaintiff's eyes and noticed, among other things, what appeared to be constricted pupils.  Having been involved in approximately 200 to 300 arrests for driving while intoxicated and driving while ability impaired, having been informed of Ms. Vincent's complaint of erratic driving, and having observed Plaintiff drive what he believed (correctly or incorrectly) to be too close behind another vehicle, Defendant conducted five field sobriety tests, and he believed (again correctly or incorrectly) that Plaintiff failed the majority of those tests.[27]  Although Plaintiff's urine sample came back negative for any of the twelve compounds tested, the results of this test do not mitigate Defendant's probable cause at the time of arrest.  Given the totality of the circumstances, Defendant had probable cause to arrest Plaintiff.

For all of these reasons, Plaintiff's false arrest claim is dismissed.

---

[27]        The Court notes that Plaintiff passed two of the five field sobriety tests administered by Defendant.

**B.** **Whether Plaintiff's Malicious Prosecution Claim Should Be Dismissed Because There Is No Genuine Issue of Material Fact**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. No. 20-12; Dkt No. 23.) To those reasons, the Court adds the following two points.

First, as previously discussed in Part IV.A.2 of this decision and order, Defendant had probable cause to arrest Plaintiff on May 17, 2017. Moreover, Trooper Cook, a drug recognition expert instructor, independently concluded that Plaintiff was impaired by a stimulant and was unsafe to drive. Because probable cause was established, Plaintiff has failed to establish all of the elements required for a claim of malicious prosecution.

Second, "actual malice 'does not require a plaintiff to prove that the defendant was motivated by spite or hatred,' but that he initiated the criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Blake v. Race*, 48 F. Supp. 2d 187, 211 (E.D.N.Y. 2007). Although actual malice can be shown by a lack of probable cause, *Blake*, 48 F. Supp. 2d at 212, Plaintiff baldly asserts that actual malice is present merely because of the absence of probable cause. (Dkt. No. 22-2, at 12.) However, Defendant had no prior involvement with Plaintiff and there is nothing in the record to suggest Defendant's actions were motivated by malice. *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, at *3 (2d Cir. 2009) (holding that officers lacked malice required for malicious prosecution).

For all of these reasons, Plaintiff's malicious prosecution claim is dismissed.

**C.     Whether Plaintiff's Racial Discrimination Claim Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 20-12; Dkt. No. 23.)  The Court would only add the following point.

As indicated above in Part III.D. of this Decision and Order, a plaintiff must show that the defendant's discrimination "'must have been intentional and purposeful' and the plaintiff must make a 'fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race.'"  *Hernandez*, 2015 WL 364183 at *4 (quoting *Yusuf v. Vassar Coll.*, 827 F. Supp. 952, 955 [S.D.N.Y. 1993]).

Here, Plaintiff argues that Defendant's playing of music allegedly derogatory to women, unsupported comments that Plaintiff was uncooperative and disrespectful, and absence of probable cause establishes a claim of racial discrimination.  (Dkt. No. 22-2, at 12.)  However, Plaintiff's argument fails to discuss, let alone provide evidence of, any "intentional and purposeful" discrimination by Defendant.  Moreover, Plaintiff has failed to identify a fact-specific causal link between her arrest/prosecution and her race.  Specifically, Plaintiff has failed to demonstrate how the music that was allegedly derogatory to women was derogatory to women of any particular race, or how Defendant's description of Plaintiff as "uncooperative and disrespectful" amounts to racism.  Simply stated, Plaintiff merely relies on legal conclusions in an attempt to demonstrate her claim of racial discrimination.

For all of these reasons, Plaintiff's racial discrimination claim is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 20) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: February 5, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge